UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| RONALD WILLIAMS, | Case No. 2:21-cv-00123-KJD-DJA |
| Plaintiff, | ORDER |
| v. | |
| WILLIAM HUTCHINGS, *et al.*, | |
| Defendants. | |

Plaintiff, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a second amended[1] civil rights complaint pursuant to 42 U.S.C. § 1983, and has filed an application to proceed *in forma pauperis* and a motion for appointment of counsel.  (ECF Nos. 4, 14, 25, 26).  Plaintiff's application to proceed *in forma pauperis* (ECF No. 4 is granted).  Based on the information regarding Plaintiff's financial status, the Court finds that Plaintiff is not able to pay an initial installment payment toward the full filing fee pursuant to 28 U.S.C. § 1915.  Plaintiff will, however, be required to make monthly payments toward the full $350.00 filing fee when he has funds available.  The Court now screens Plaintiff's second amended civil rights complaint under 28 U.S.C. § 1915A and addresses the motion for appointment of counsel.

I.   SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C. § 1915A(a).  In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is

---

[1] An amended complaint replaces an earlier complaint. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989). Therefore, the operative complaint is the Second Amended Complaint (ECF No. 26).

1   immune from such relief.  *See id.* §§ 1915A(b)(1), (2).  *Pro se* pleadings, however, must

2   be liberally construed.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

3   1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential

4   elements: (1) the violation of a right secured by the Constitution or laws of the United

5   States; and (2) that the alleged violation was committed by a person acting under color

6   of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

7        In addition to the screening requirements under § 1915A, under the Prison

8   Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's

9   claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails

10   to state a claim on which relief may be granted, or seeks monetary relief against a

11   defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a

12   complaint for failure to state a claim upon which relief can be granted is provided for in

13   Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under

14   § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a

15   court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend

16   the complaint with directions as to curing its deficiencies, unless it is clear from the face

17   of the complaint that the deficiencies could not be cured by amendment. *See Cato v.*

18   *United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

19        Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See*

20   *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to

21   state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in

22   support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d

23   756, 759 (9th Cir. 1999).  In making this determination, the Court takes as true all

24   allegations of material fact stated in the complaint, and the Court construes them in the

25   light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th

26   Cir. 1996).  Allegations of a *pro se* complainant are held to less stringent standards than

27   formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While

28   the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff

1    must provide more than mere labels and conclusions.  *See Bell Atl. Corp. v. Twombly*,

2    550 U.S. 544, 555 (2007).  A formulaic recitation of the elements of a cause of action is

3    insufficient.  *See id.*

4          Additionally, a reviewing court should "begin by identifying pleadings [allegations]

5    that, because they are no more than mere conclusions, are not entitled to the assumption

6    of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "While legal conclusions can

7    provide the framework of a complaint, they must be supported with factual allegations."

8    *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity

9    and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*

10   "Determining whether a complaint states a plausible claim for relief . . . [is] a context-

11   specific task that requires the reviewing court to draw on its judicial experience and

12   common sense."  *Id.*

13         Finally, all or part of a complaint filed by an incarcerated person may be dismissed

14   *sua sponte* if that person's claims lack an arguable basis either in law or in fact.  This

15   includes claims based on legal conclusions that are untenable (*e.g.*, claims against

16   defendants who are immune from suit or claims of infringement of a legal interest which

17   clearly does not exist), as well as claims based on fanciful factual allegations (*e.g.*,

18   fantastic or delusional scenarios).  *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989);

19   *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

20   **II.     SCREENING OF SECOND AMENDED COMPLAINT**

21         In his Second Amended Complaint ("SAC"), Plaintiff sues Sherry Williams for

22   events that allegedly took place while Plaintiff was incarcerated by the Nevada

23   Department of Corrections.  (ECF No. 26 at 1-2).  Plaintiff brings three counts, and he

24   seeks monetary damages as well as injunctive relief in the form of a transfer to a prison

25   in California.[2]  (*Id.* at 16-21).

26

27   _____
     [2] Under the Prison Litigation Reform Act ("PLRA"), preliminary injunctive relief must
28   be "narrowly drawn," must "extend no further than necessary to correct the harm the court
     finds requires preliminary relief," and must be "the least intrusive means necessary to
     correct that harm."  18 U.S.C. § 3626(a)(2).  There "must be a relationship between the
     *(fn. cont…)*

1     Because Plaintiff's three claims appear to be overlapping, the Court will analyze

2     all three claims together.

3         Claim 1 alleges the following: Defendant Shelly Williams, a records

4     specialist/program officer at O.M.D., has caused Plaintiff "to do excessive prison time by

5     not applying the proper credits to Plaintiff's minimum and maximum sentences. (ECF No.

6     26 at 5).  The NDOC takes six days a month from Plaintiff "without notice or due process

7     of law" even when Plaintiff does not have any serious violations of the prison rules.  (*Id.*)

8     Plaintiff has not been given the 20 days of deductions from his sentences each month

9     that is due to him under Nevada statutes.[3]  (*Id.*)  For each month Plaintiff does not work

10    or go to school, he "loses" 6 days a month without "due process of law," resulting in a

11    longer stay in prison.  (*Id.*)

12        Plaintiff asserts that Shelly Williams knows that a "policy" would "subject Plaintiff

13    to a liberty interest" by not applying good time credits or recalculating Plaintiff's sentence

14    in the proper fashion.  (*Id.* at 6).  Plaintiff asserts that, under NRS 209.4465, he is entitled

15    to good time/work time credits even if the NDOC does not have enough jobs and

16    programs for every prisoner.  (*Id.*)  Although Plaintiff's allegations are not clear, he

17    appears to be alleging that he is being subjected to cruel and unusual punishment

18    because he has to spend most of his time alone in his cell with no programs, so he cannot

19    earn "good time/work time credits" and will stay in prison longer.  (*Id.* at 7-8).

20

21

22    injury claimed in the motion for injunctive relief and the conduct asserted in the underlying
      complaint. This requires a sufficient nexus between the claims raised in a motion for
23    injunctive relief and the claims set forth in the underlying complaint itself.*" Pac. Radiation
      Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 635–36 (9th Cir. 2015).  Based on
24    these legal requirements, it is apparent from the allegations in the Second Amended
      Complaint that Plaintiff could not obtain a transfer to a California prison as relief in this
25    case.

26        [3] Although it is not entirely clear, Plaintiff's reference to 6 days per month appears
      to be a reference to credits for work and study that may be allowed under NRS
27    209.4465(2), and his reference to 20 days appears to be about good time credits earned
      under NRS 209.4465(1).  Prior to an amendment to the law, the statutory good time
28    credits were 10 days per month, but while Plaintiff was in prison, on July 1, 2007, the
      statutory good time credits then increased to 20 days per month.  2007 Nev. Stat., ch.
      525, § 5, at 3176.

1    Plaintiff acknowledges that Nevada prisoners have no liberty interest in parole, but

2  he maintains that the "policy" of the NDOC should be rendered unconstitutional because

3  prisoners have a right to address the court under the due process guarantees of the Fifth

4  and Fourteenth Amendments.  (*Id.* at 8).   According to Plaintiff, this means that he has a

5  due process right not to have his § 1983 complaint dismissed.[4]  (*Id.*)

6    Plaintiff maintains that he has exhausted all administrative remedies through the

7  NDOC grievance procedures.  (*Id.* at 9).  The grievance procedures do not work, and

8  Plaintiff appears to conclude that he has a "liberty interest" associated with the grievance

9  procedures.  (*Id.*)  Shelly Williams had 17 years to correct the "violations of this liberty

10  interest," and the Fourteenth Amendment prohibits a state from depriving any person of

11  liberty without due process of law. (*Id.*)

12    Plaintiff concludes that the denial of "access to work and education to earn good

13  time" is a violation of due process because Plaintiff must be provided notice or a hearing

14  before "the prison" does anything that harms life or liberty.  (*Id.*)  Plaintiff further concludes

15  that this has caused him atypical hardship or excessive confinement.  (*Id.*)

16    Plaintiff also asserts that he was sentenced to consecutive prison terms from a

17  single incident and that the "redundant charges" are a violation of the Double Jeopardy

18  Clause and the Fifth and Fourteenth Amendments.  (*Id.*)

19    Based on these allegations in Claim 1, Plaintiff concludes that his Fifth

20  Amendment, Eighth Amendment, and Fourteenth Amendment rights have been violated.

21  (*Id.* at 5).

22    Claim 2 alleges the following:  Shelly Williams has been employed as a record

23  specialist/program officer for the NDOC since 1998 and knew that the violations were

24  illegal and would subject Plaintiff to "excessive prison time."  (ECF No. 26 at 11).  Plaintiff

25  asserts that, under NRS 209.4465, he is entitled to good time/statutory credits and that

26  he is being penalized by the NDOC without due process of law or any notice, in violation

27

28    ⁴ To the extent Plaintiff is alleging that he has a due process right not to have this action dismissed by the Court, he is incorrect.  Moreover, any such claim would not properly be brought against Defendant Shelly Williams.

1   of his Fifth Amendment, Eighth Amendment, and Fourteenth Amendment rights.   (*Id.*)

2   "Taking" 6 days per month is causing Plaintiff to do "excessive prison time."  (*Id.* at 12).

3   Plaintiff further alleges that NRS 209.4465 provides that earned credits of 20 days must

4   be deducted from Plaintiff's minimum and maximum terms of imprisonment.  (*Id.*)  He

5   concludes that Defendant violated his Fourteenth Amendment right to due process.  (*Id.*

6   at 13).

7          In addition, Plaintiff alleges that his Fourteenth Amendment right to equal

8   protection has been violated.  He makes the conclusory assertion that Defendant "acted

9   with intent and purpose to discriminate" against Plaintiff "based upon membership in a

10  protected class" and that Defendant purposely treated him "differently than similarly

11  situated individuals without any rational basis." (*Id.*)   However, he alleges no facts at all

12  that would show that he is a member of a protected class.  Rather, Plaintiff appears to be

13  pursuing a class of one equal protection claim and explicitly asserts that the Supreme

14  Court has recognized that there can be class of one equal protection claims.  (*Id.* at 14,

15  15).   Plaintiff alleges that he received responses from "N.D.O.C. case workers" stating

16  that they would not apply the Nevada Supreme Court's decision in *Vonseydewitz v.*

17  *Legrand*, Dkt No. 66159, 2015 WL 3936827 (Nev. June 24, 2015) (unpublished

18  disposition) to inmates other than Vonseydewitz without a court order.  (*Id.* at 13).   In

19  *Vonseydewitz*, the Nevada Supreme Court held that good time credits should be applied

20  to Vonseydewitz's minimum sentence because the sentencing statute did not state that

21  Vonseydewitz had to serve a specified minimum sentence before becoming eligible for

22  parole.  (*Id.* at 14).  Plaintiff asserts that he is in a class of one because the defendants[5]

23  knew that his sentencing statute permitted good time credits to be deducted from his

24  minimum and maximum sentences in light of *Vonseydewitz,* but "they" refused to apply

25  credits correctly "solely because Plaintiff did not have a court order requiring them to do

26  so, as Vonseydewitz did."  (*Id.* at 15).   Plaintiff asserts that there is no rational basis for

27  distinguishing between inmates with court orders and those without court orders.  (*Id.*)

28

---

[5] Although Plaintiff repeatedly refers to multiple defendants, the SAC includes just one defendant.

1   Based on these allegations in Claim 2, Plaintiff concludes that his Fifth

2   Amendment, Eighth Amendment, and Fourteenth Amendment rights have been violated.

3   (*Id.* at 11).

4   Claim 3 alleges the following:  Plaintiff committed attempted murder with the use

5   of a deadly weapon on May 19, 2002, which "falls under NRS 209.4465(7)(b) between

6   1997 and 2007."  (ECF No. 26 at 16).  Plaintiff alleges that the district court[6] erred and

7   violated Plaintiff's due process rights by denying Plaintiff's application of credits due to

8   NRS 209.4465.  (*Id.*)

9   In addition, in Claim 3, Plaintiff alleges that there was an ex post facto violation.

10  Plaintiff alleges that he committed his crimes before the enactment of "the amendment."

11  (*Id.* at 17).   He further alleges: "By applying subsection 8 to Plaintiff Ronald C. Williams

12  causes me a liberty interest, which the state has increased Plaintiff punishment because

13  the statute NRS 209.4465 section 8 appears to eliminate the good time credits Plaintiff

14  suppose to earn prior to enactment."  (*Id.*)  Plaintiff asserts that such laws are prohibited

15  by the Ex Post Facto Clause in Article 1 of the United States Constitution.  (*Id.*)

16  Plaintiff also once again asserts that "Defendants and the N.D.O.C." have made

17  him serve excessive prison time on all the charges that came out of a single act when he

18  should have been charged with just one count of attempt murder with the use of a deadly

19  weapon.  (*Id.* at 18).

20  Plaintiff again asserts that he is entitled to "credits" to both minimum and maximum

21  sentences under NRS 209.4465(7)(b).[7]  (*Id.* at 18).

22  Plaintiff asserts that all his claims are supported by attached exhibits.  (*Id.*)

23

24

25

26          [6] This appears to be a reference to a Nevada state district court.  Plaintiff does not

27  allege what the error was.  More importantly, the district court is not a defendant in this
    action and cannot be a defendant in this action.

28          [7] The Court notes that, by its terms, NRS 209.4465(7)(b) affects only minimum
    sentences and parole eligibility dates, not maximum sentences and sentence expiration
    dates.

1   Based on these allegations, Plaintiff concludes that his Fifth Amendment, Eighth

2   Amendment, and Fourteenth Amendment rights have been violated and that there has

3   been an ex post facto violation.  (*Id.* at 16).

4   **A.  *Heck* Bar**

5   Throughout the SAC, Plaintiff alleges that conduct has affected his maximum

6   sentence and that he has served excessive time in prison.  As the Court previously

7   explained, such allegations must survive the *Heck* bar.  (ECF No. 24 at 5).  In *Heck v.*

8   *Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that "in order to recover

9   damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm

10  caused by actions whose unlawfulness would render a conviction or sentence invalid, a

11  § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct

12  appeal, expunged by executive order, declared invalid by a state tribunal authorized to

13  make such determination, or called into question by a federal court's issuance of a writ of

14  habeas corpus."  *Id*. at 486-87.  "A claim for damages bearing that relationship to a

15  conviction or sentence that has not been . . . invalidated is not cognizable under § 1983."

16  *Id*. at 487.  "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court

17  must consider whether a judgment in favor of the plaintiff would necessarily imply the

18  invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless

19  the plaintiff can demonstrate that the conviction or sentence has already been

20  invalidated."  *Id*.  As a result, the Supreme Court has held that a state prisoner's § 1983

21  action is barred (absent prior invalidation)–no matter the relief sought (damages or

22  injunctive relief) if success in that action necessarily would demonstrate the invalidity of

23  confinement or its duration.  *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).[8]

24

25  [8] However, if a civil claim merely would speed up the plaintiff's consideration for
    parole and would not necessarily imply the invalidity of the duration of confinement, then
26  that claim may proceed in a § 1983 action.  *Id*. at 82.  Thus, to the extent Plaintiff is merely
    challenging the calculation of his parole eligibility date only and that any such claim would
27  not necessarily directly or indirectly affect the fact or duration of his confinement, such a
    claim is not barred by *Heck* and *Wilkinson*.  That does not mean, however, that Plaintiff
28  has stated a colorable claim against any of the named defendants concerning his parole
    eligibility date.  As discussed below, he has not.

8

1       The Court previously advised Plaintiff that, if Plaintiff wished to pursue any claims

2   that explicitly or implicitly necessarily challenge the fact or duration of his confinement,

3   then any second amended complaint must show that a court already has invalidated the

4   fact or duration of confinement.  (ECF No. 24 at 6).  The Court explicitly informed Plaintiff

5   that invalidation or recalculation of a parole eligibility date would not be sufficient to permit

6   Plaintiff to raise any claim that necessarily calls into question the fact or duration of his

7   confinement, regardless of whether such a claim relates to past, current, or pending

8   sentences. (*Id.*)

9       Plaintiff has not shown that the fact or duration of his confinement already has

10  been invalidated by a court.  Although the SAC includes documents concerning a state

11  court habeas matter, that matter concerned the calculation of Plaintiff's minimum

12  sentence and parole eligibility date.  (ECF No. 26-1 at 5-15).  Despite the Court's previous

13  advisement, Plaintiff has not shown that a court has ruled that Plaintiff impermissibly was

14  charged, convicted, and sentenced[9] in violation of the Double Jeopardy Clause and has

15  not shown that any court has ruled that the length of any of his sentences have had

16  improper expiration dates or that he otherwise has spent too much time in prison.

17  Accordingly, all of the claims in the SAC that explicitly or implicitly challenge the fact of

18  Plaintiff's convictions or the duration of his confinement are barred.  This includes all

19  claims that he improperly was charged, convicted, and sentenced for multiple crimes

20  arising out of the same incident and all claims that explicitly or implicitly allege that his

21  maximum sentence or expiration date were improperly calculated or affected.  The Court

22  dismisses these claims with prejudice, as amendment would be futile.

23      The Court will address below any claims that necessarily challenge only the

24  application of credits to Plaintiff's minimum sentence and parole eligibility date as such

25  claims are not barred by *Heck*.  Because an earlier parole hearing would not necessarily

26  

27          [9] Plaintiff also has not alleged facts sufficient to show that Shelly Williams was
    responsible for charging, convicting, or sentencing him, so he necessarily does not state
    a claim against Shelly Williams for such conduct.  As the Court previously informed
28  Plaintiff, *see* ECF No. 24 at 4, a plaintiff must plead facts sufficient to show that each
    particular Government-official defendant, through the official's own individual actions, has
    violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

1    lead to the grant of parole at that parole hearing or necessarily imply the invalidity of the

2    duration of Plaintiff's confinement, to the extent Plaintiff is challenging only the application

3    of credits to determine his parole eligibility date, such claims are not barred by *Heck* or

4    *Wilkinson*.  The Court therefore will screen Plaintiff's claims that concern Shelly Williams's

5    alleged actions affecting only the application of credits to his parole eligibility date.

6                    **B.  Fifth Amendment Due Process Claims**

7            Plaintiff repeatedly asserts that his Fifth Amendment rights have been violated.

8    The Fifth Amendment's Due Process Clause applies to the federal government, not the

9    States, while the Fourteenth Amendment's Due Process Clause applies to the states.

10   *See Castillo v. McFadden,* 399 F.3d 993, 1002 n.5 (9th Cir. 2005).   Plaintiff has not

11   alleged actions by a federal employee.   Therefore, to the extent Plaintiff is seeking to

12   bring any Fifth Amendment due process claim, any such claim is dismissed with

13   prejudice, as amendment would be futile.

14                   **C.  Fourteenth Amendment Due Process Claims**

15           The United States Constitution does not create a liberty interest in a job,

16   educational program, prison classification, or assignment to a particular prison.   *See*

17   *Collins v. Palczewski*, 841 F.Supp. 333, 336, 340 (D. Nev. 1993) (finding that neither the

18   U.S. Constitution, Nevada statutory law, nor the state's prison administrative regulations

19   create a protected liberty or property interest in prison employment); *Moody v. Daggett*,

20   429 U.S. 78, 88 n.9 (1976) (holding that prisoners have no liberty interest in their

21   classification status or in rehabilitation programs); *Olim v. Wakinekona*, 461 U.S. 238, 245

22   (1983) (holding that "an inmate has no justifiable expectation that he will be incarcerated

23   in any particular prison within a State"). Therefore, Plaintiff's classification, prison

24   assignment, and lack of job and programming opportunities are not sufficient to state a

25   colorable liberty interest.

26           Allegations that a defendant violated state law are not sufficient to state a claim for

27   violation of the Fourteenth Amendment's Due Process Clause.  *Swarthout v. Cooke*, 562

28   U.S. 216, 222 (2011); *see also Young v. Williams*, No. 2:11-CV-01532-KJD, 2012 WL

                                                    10

1    1984968, at *3 (D. Nev. June 4, 2012) (holding that alleged error in applying good time

2    credits to sentence was an error of state law that did not constitute a due process

3    violation).   In order to state a Fourteenth Amendment due process claim, a plaintiff must

4    adequately allege that he was denied a specified liberty interest and that he was deprived

5    of that liberty interest without the *constitutionally* required procedures.   *Swarthout*, 562

6    U.S. at 219.

7         Nevada state prisoners do not have a liberty interest in the grant of parole.   *See*

8    *Moor v. Palmer*, 603 F.3d 658, 661-62 (9th Cir. 2010).   Because the grant of parole is

9    discretionary in Nevada, state statutes creating procedures concerning the discretionary

10   grant of parole, such as parole eligibility provisions in NRS 209.4465, do not create a

11   liberty interest.   *Chaziza v. Stammerjohn*, No. 19-17506, 2021 WL 2139080, at *1–2 (9th

12   Cir. May 26, 2021) (holding that Nevada prisoner did not establish a due process claim

13   where NDOC officials failed to properly apply NRS 209.44654 and *Vonseydewitz* to

14   deduct time credits and calculate his parole eligibility date*); see also Olim v. Wakinekona*,

15   461 U.S. 238, 250–51 (1983) (recognizing that where state officials have discretion and

16   prisoner does not a constitutional substantive right, the prisoner has no related

17   constitutional procedural right, and holding that state may choose to require certain

18   procedures but doing so does not create an independent constitutional substantive right

19   in those procedures).

20        Thus, to the extent Plaintiff is alleging that he was deprived of the ability to earn

21   credits and that credits were not properly applied to his parole eligibility date, in violation

22   of state law, he does not and cannot state a liberty interest.   Accordingly, Plaintiff's

23   allegations that Defendant Shelly Williams violated state law, including state procedures,

24   such as by not giving Plaintiff credits, jobs, and educational opportunities and by not

25   applying credits to his parole eligibility date, are not sufficient to state a due process claim.

26        In addition, to the extent Plaintiff alleges that his due process rights were violated

27   because there was not an effective grievance procedure or because he has a liberty

28   interest in a grievance procedure, he does not and cannot state a colorable due process

claim.  Prisoners have no liberty interest in a grievance procedure or due process rights to the handling of grievances in any particular manner. *See Mann v. Adams,* 855 F.2d 639, 640 (9th Cir.1988) (holding that a state's unpublished policy statements establishing a grievance procedure do not create a constitutionally protected liberty interest because there is no legitimate claim of entitlement to a grievance procedure); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (recognizing that there is no liberty interest in the processing of appeals because prisoners are not entitled to a specific grievance process); *Patterson v. Kane*, No. 06-15781, 2006 WL 3698654, at *1 (9th Cir. Dec. 13, 2006) (recognizing that denial of a grievance does not rise to the level of a constitutional violation); *LeBlanc v. Tabak*, No. CV1603270JLSAFM, 2016 WL 6102327, at *6 (C.D. Cal. Oct. 18, 2016) (holding that prisoner could not  state a colorable due process claim based on a defendant's denial of a grievance or failure to adequately investigate a grievance).

Accordingly, the Court dismisses the Fourteenth Amendment due process claims with prejudice, as amendment would be futile.

**D.  Fourteenth Amendment Equal Protection Claims**

Plaintiff brings a class of one equal protection claim, alleging that it was a violation of equal protection for NDOC officials to apply the Nevada Supreme Court's ruling in *Vonseydewitz v. Legrand*, 131 Nev. 1360 (2015) (unpublished disposition) to Mr. Vonseydewitz but not apply it to other prisoners, including Plaintiff, who did not have court rulings in their own cases but had criminal sentences comparable to Mr. Vonseydewitz's.

In *Olech*, the Supreme Court explicitly addressed "whether the Equal Protection Clause gives rise to a cause of action on behalf of a 'class of one' where the plaintiff did not allege membership in a class or group."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  The Supreme Court ruled in the affirmative and "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Id*.; *see also Engquist v. Oregon Dep't of Agr.*, 553

1  U.S. 591, 601 (2008) (recognizing that an equal protection claim may be maintained in
2  some circumstances even if the plaintiff does not allege class-based discrimination, "but
3  instead claims that she has been irrationally singled out as a so-called 'class of one'").

4        Where a class of one equal protection claim is at issue, the Plaintiff must allege
5  facts sufficient to identify the group of individuals with whom he is similarly situated,
6  identify the allegedly intentional and disparate treatment, and allege that there was no
7  rational basis for the different treatment.  *Gerhart v. Lake Cty., Mont*., 637 F.3d 1013,
8  1022 (9th Cir. 2011); *Chappell v. Bess*, No. 2:01-CV-01979 KJN P, 2012 WL 3276984, at
9  *19–21 (E.D. Cal. Aug. 9, 2012).  "Similarly situated" persons are those "who are in all
10  relevant respects alike*." Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

11        The Court finds that Plaintiff does not state a colorable equal protection claim.  As
12  was allegedly the case with Plaintiff, NDOC officials took the position that Mr.
13  Vonseydewitz was not entitled under the law to have earned credits applied to his
14  minimum sentence under NRS 209.4465(7)(b). *Vonseydewitz*, 131 Nev. 1360 at *1.
15  However, in the unpublished disposition in Mr. Vonseydewitz's case, the Nevada
16  Supreme Court ruled that NDOC officials had misinterpreted NRS 209.4465(7)(b) and
17  reversed and remanded for proceedings consistent with the unpublished disposition. *Id.*
18  at *3.  Plaintiff alleges that the NDOC did not apply the Nevada Supreme Court's
19  unpublished *Vonseydewitz* disposition to Plaintiff. However, under Nevada Rule of
20  Appellate Procedure 36(c), an unpublished disposition by the Nevada Supreme Court in
21  one person's case establishes mandatory precedent in that particular person's case but
22  does <u>not</u> establish mandatory precedent for another person's case.  Thus, although this
23  understandably would be frustrating for Plaintiff, under the law, the Nevada Supreme
24  Court's unpublished disposition in *Vonseydewitz* was mandatory precedent for Mr.
25  Vonseydewitz, but the unpublished decision was not mandatory precedent for any NDOC
26  official's decisions regarding Plaintiff.  Plaintiff therefore has not alleged facts sufficient to
27  show that Mr. Vonseydwitz was in all relevant respects alike.  Accordingly, Plaintiff does

1    not and cannot state a colorable equal protection claim.  The Court therefore dismisses

2    the equal protection claim with prejudice, as amendment would be futile.

3            **E.  Eighth Amendment**

4            Plaintiff appears to be alleging that his Eighth Amendment rights were violated

5    because he was not given a job and programming such as educational opportunities and

6    because he did not have credits applied to his minimum sentence or minimum sentences

7    when calculating his parole eligibility date.

8            As the Court explained in its previous screening order[10], a plaintiff must plead facts

9    sufficient to show that each Government-official defendant, through the official's own

10   individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676

11   (2009).  Although the SAC vaguely alleges that Defendant Shelly Williams did not apply

12   the proper credits to his sentences, the SAC does not allege that she denied him a job or

13   programming.  Even if the SAC did include such allegations, this would not be sufficient

14   to state a colorable Eighth Amendment claim against her.  It is not an Eighth Amendment

15   violation to deny a prisoner a job, education, or other programming. *See Rhodes v.*

16   *Chapman*, 452 U.S. 337, 348 (holding that deprivation of rehabilitation and educational

17   programs does not violate Eighth Amendment); *Baumann v. Arizona Dept. of Corrections*,

18   754 F.2d 841, 846 (9th Cir.1985) (holding that general limitation of jobs and educational

19   opportunities is not considered punishment); *Hoptowit v. Ray*, 682 F.2d 1237, 1254–55

20   (9th Cir.1982) (holding that "there is no constitutional right to rehabilitation").

21           To the extent Plaintiff alleges that failing to apply the proper credits to his parole

22   eligibility date violated his Eighth Amendment rights, Plaintiff fails to state a colorable

23   Eighth Amendment claim.  Because imprisonment is punitive, officials who detain a

24   person beyond the termination of a sentence may violate that person's rights under the

25   Eighth Amendment if they act with deliberate indifference to the prisoner's liberty interest.

26   *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).  For the reasons discussed

27

28

_____

[10] ECF No. 24 at 4.

1   above, any claim that Plaintiff necessarily served excessive time in prison is *Heck* barred,

2   and Plaintiff has not adequately alleged a liberty interest and cannot do so.

3       Accordingly, the Court dismisses the Eighth Amendment claims with prejudice, as

4   amendment would be futile.

5       **F.   Ex Post Facto Claim – Parole Eligibility Dates**

6       Although his theory is not clear, it appears that Plaintiff is alleging that there was

7   an ex post facto violation as a result of NRS 209.4465(8).  It may be that Plaintiff is alleging

8   that he did not have any credits applied to his minimum sentences and parole eligibility

9   dates after July 1, 2007 due to the enactment of NRS 209.4465(8).  Or, it may be that he

10  is alleging that he has received only ten good time credits per month for the time before

11  the enactment of NRS 209.4465(8).  The Court therefore will address both theories.

12      Article I of the United States Constitution prohibits states from passing Ex Post

13  Facto laws.   U.S. Const. Art. I, § 10, cl. 1.   The Ex Post Facto Clause "forbids the

14  imposition of punishment more severe than the punishment assigned by law when the

15  act to be punished occurred."  *Weaver v. Graham*, 450 U.S. 24, 30 (1981); *see also*

16  *Garner v. Jones,* 529 U.S. 244 (2000).  The Ex Post Facto Clause does not forbid changes

17  in  the  law.    To  fall  within  the  *ex  post  facto*  prohibition,  a  law  must  be  applied

18  retrospectively, which means that it must apply to events occurring before its enactment.

19  *Lynce  v.  Mathis*,  519  U.S.  433,  441  (1997).  Thus,  the  incorrect  interpretation  and

20  misapplication of a law that does <u>not</u> apply retrospectively to a person does not constitute

21  a violation of the Ex Post Facto Clause.  *See, e.g., Vonseydewitz*, 2015 WL 3936827 at

22  *3 (rejecting ex post facto claim where official incorrectly applied NRS 209.4465(b), which

23  was not applied retroactively).

24      Plaintiff refers to NRS 209.4465(8) in his allegations of an ex post facto violation.

25  In 2002, when Plaintiff alleges that he committed his offense, NRS 209.4465(7) provided:

26      "Credits earned pursuant to this section:

27      (a) Must be deducted from the maximum term or the maximum aggregate term

28  imposed by the sentence, as applicable; and

1    (b) Apply to eligibility for parole <u>unless the offender was sentenced pursuant to a</u>

2    <u>statute which specifies a minimum sentence that must be served</u> before a person

3    becomes eligible for parole."  NRS 209.4465(7) (emphasis added).

4         NDOC prison officials interpreted the limiting language in NRS 209.4465(7)(b)

5    narrowly.  In *Vonseydewitz v. Legrand*, Dkt No. 66159, 2015 WL 3936827 (Nev. June 24,

6    2015) (unpublished disposition), the Nevada Supreme Court considered this limiting

7    language when addressing the issue of whether Vonseydewitz, a habeas petitioner, was

8    entitled under the language of NRS § 209.4465(7)(b) to have his earned credits applied

9    to his parole eligibility date.  *Id.*  The court interpreted the limiting language in NRS §

10   209.4465(7)(b) more broadly than NDOC officials had and held that Vonseydewitz was

11   entitled to have statutory credits applied to his parole eligibility dates because he had

12   committed an offense that required a minimum sentence but that did not explicitly require

13   the offender to serve a minimum period of time before being considered for parole.  (Id.

14   at **2-3).  Later, in a 2017, in a published opinion, the Nevada Supreme Court reached

15   the same conclusion regarding the proper interpretation of NRS 209.4465(7)(b) as it had

16   in *Vonseydewitz*.  *See Williams v. State Dep't of Corr.*, 402 P.3d 1260, 1262 (Nev. 2017).

17        The Nevada Legislature amended NRS 209.4465 in A.B. 510 and, on July 1, 2007,

18   these amendments went into effect.  One of these amendments was to add subsection

19   8, which affected how earned credits were to be applied to some people. NRS

20   209.4465(8) provides:

21        8. Credits earned pursuant to this section by an offender who has <u>not</u> been

22   convicted of:

23        (a) Any crime that is punishable as a felony involving the use or threatened use of

24   force or violence against the victim;

25        (b)  A sexual offense that is punishable as a felony;

26        (c)  A violation of NRS 484C.110, 484C.120, 484C.130 or 484C.430 that is

27   punishable as a felony; or

28        (d) A category A or B felony,

1   apply to eligibility for parole and must be deducted from the minimum term imposed

2   by the sentence until the offender becomes eligible for parole and must be deducted from

3   the maximum term imposed by the sentence.

4        NRS 209.4465(8) (2007) (emphasis added).

5        At the same time that the statute was amended to add NRS 209.4465(8), NRS

6   209.4465(7) was amended to begin, "Except as otherwise provided in subsection 8."

7   Thus, under the amended statute, category B felons (including attempted murderers) who

8   committed their offenses after the effective date of that amendment are not eligible to

9   have good time credits applied when determining their maximum terms or when

10  determining the minimum terms they are required to serve before being eligible for parole.

11       But, because of how NDOC officials were interpreting NRS 209.4465(7)(b), there

12  also were offenders, such as the petitioners in *Vonseydewitz* and *Williams*, who

13  unquestionably committed their crimes before the effective date of the amendment who

14  also were not having credits applied to their minimum eligibility parole dates, not because

15  of the amendment, but due to the way that prison officials were interpreting and applying

16  the limiting language in NRS 209.4465(7)(b), a statutory provision that was being applied

17  incorrectly but not retrospectively.   In *Vonseydewitz*, the Nevada Supreme Court rejected

18  the petitioner's claim that NDOC officials were retroactively applying NRS 209.4465(8) in

19  violation of the ex post facto clause.  *Vonseydewitz v. Legrand*, Dkt No. 66159, 2015 WL

20  3936827 *3 (Nev. June 24, 2015) (unpublished).  The Nevada Supreme Court found that

21  the responses to Plaintiff's grievances showed that officials were not retroactively

22  applying NRS 209.4465(8) to deny the petitioner credits towards his parole eligibility date

23  but instead were misinterpreting and misapplying the exception in the limiting language

24  of NRS 209.4465(7)(b), which was in effect when he committed his offense.[11]  *Id.*

25       In the instant case, it may be that Plaintiff is alleging that he was not having any

26  good time credits applied to his sentence after the enactment of NRS 209.4465(8)

27  because NRS 209.4465(8) was applied to him even though he committed his crimes

28

---

[11] *Williams* did not involve any ex post facto issues or NRS 209.4465(8).

1   before its enactment.[12]   Plaintiff makes the conclusory allegation that the Ex Post Facto

2   Clause was violated, cites to NRS 209.4465(8), and refers to the exhibits attached to the

3   SAC.   Merely amending the law is not a violation of the Ex Post Facto Clause.   The new

4   law must be applied to him retrospectively by the defendant.   Plaintiff does not allege any

5   facts that would show that Shelly Williams found Plaintiff ineligible to ever have good time

6   credits applied to his parole eligibility date because she applied NRS 209.4465(8) to him

7   and did not apply 209.4465(7)(b).   In fact, Plaintiff appears to be alleging that she was

8   applying NRS 209.4465(7)(b) to him, but that she was applying it incorrectly, and he

9   alleges that NDOC officials refused to change this even after the *Vonseydewitz* decision

10  because Plaintiff did not yet have a court order comparable to the order Mr. Vonseydewitz

11  had.

12          Furthermore, although Plaintiff asserts that the exhibits to the SAC support his

13  claim, they do not.   Nothing in the attachments to the SAC even mentions NRS

14  209.4465(8).   Rather, the attachments support Plaintiff's allegations that NRS

15  209.4465(7)(b), which was in effect at the time he committed his offenses, was applied to

16  him and that it was applied incorrectly.   According to the exhibits, following the Nevada

17  Supreme Court's published opinion in *Williams* concerning NRS 209.4465(7)(b), NDOC

18  officials conceded in a state court habeas proceeding filed by Plaintiff that Plaintiff's

19  sentence must be recalculated in light of the *Williams* opinion (which did not involve any

20  *ex post facto* issues) and the proper interpretation of NRS 209.4465(7)(b), and Sherry

21  Williams submitted a document in that habeas case stating that Plaintiff's parole eligibility

22  date had been adjusted.   (ECF No. 26-1 at 5-15).   There is nothing in the exhibits to

23  indicate that Sherry Williams refused to make the adjustment on the grounds that NRS

24  209.4465(8) applied to him and that NRS 209.4465(7)(b) did not and there is nothing that

25  to indicate that she ever applied NRS 209.4465(8) to him to find him ineligible to have

26  good time credits applied to his parole eligibility date for any period of time.   Thus, there

27  
_____

28  [12] It seems doubtful that such a claim could survive the *Heck* bar because the
retrospective application of NRS 209.4465(8) would affect not only Plaintiff's minimum
sentence but also his maximum sentence.   The Court need not resolve this issue because
Plaintiff does not otherwise state a colorable Eighth Amendment claim.

1   is nothing in the SAC alleging facts sufficient to show that Sherry Williams retroactively

2   applied 209.4465(8) to find Plaintiff ineligible to have time credits applied to his parole

3   eligibility dates for any period of time.

4           In addition, Plaintiff appears to believe that because NRS 209.4465(8) was added

5   after he committed his offense, "the state" increased his punishment by eliminating his

6   good time credits.  Although it is not clear, it may be that Plaintiff is alleging that he should

7   have received 20 good time credits for every month that he has been in prison but that

8   he received only ten good time credits for months prior to July1, 2007 as a result of NRS

9   209.4465(8).   The exhibits to the SAC would support such a factual allegation. (*See* ECF

10  No. 26-1, at 17-20 showing increase in number of monthly statutory good time credits

11  from 10 to 20 beginning July 2007). The 2007 Nevada Legislature amended NRS

12  209.4465 to increase the amount of statutory good time credits that could be earned by

13  an offender, from 10 days per month to 20 days per month.  2007 Nev. Stat., ch. 525, §

14  5, at 3176.  The Legislature also provided that, for offenders who had not been convicted

15  of the offenses listed in the newly adopted NRS 209.4465(8), this beneficial increase in

16  the number of credits would be applied retroactively to July 1, 2000.  2007 Nev. Stat., ch.

17  525, § 21, at 3196.   Thus, Plaintiff, who alleges that he was convicted of attempted

18  murder, would not be eligible to have this benefit applied retroactively.  *See Wellington v.*

19  *State*, 238 P.3d 865 at *1 (unpublished disposition).

20          However, to the extent Plaintiff is alleging that the failure to retroactively apply this

21  increase in good time credits was a violation of the Ex Post Facto Clause, he is incorrect.[13]

22  As discussed above, the Ex Post Facto Clause forbids the imposition of punishment more

23  severe than the punishment assigned by law when the act to be punished occurred.

24  Although Plaintiff may not have been treated as favorably as others with the increase in

25  the number of credits, his punishment after the amendment was not more severe than

26  the law that was in effect at the time he committed his offenses.  Therefore, Plaintiff does

27

28

_____

[13] In addition, if the increase in the number of credits necessarily would affect both maximum and minimum sentence, this claim may be barred by *Heck*.

not and cannot state a colorable *ex post facto* claim based on this theory and any such claim is dismissed with prejudice, as amendment would be futile.

Accordingly, Plaintiff fails to state a colorable ex post facto claim.  The Court therefore dismisses this claim with prejudice, as amendment would be futile.

## III.   MOTION FOR APPOINTMENT OF COUNSEL

Like many prisoners, Plaintiff has limited library access and has filed a motion for appointment of counsel.  (ECF No. 25).  Because the Court is dismissing this action, the Court denies the motion as moot.

## IV.   CONCLUSION

It is therefore ordered that Plaintiff's application to proceed *in forma pauperis* (ECF Nos. 4, 14) without having to prepay the full filing fee is **granted**.  Plaintiff will **not** be required to pay an initial installment fee.  Nevertheless, the full filing fee will still be due, pursuant to 28 U.S.C. § 1915, as amended by the Prison Litigation Reform Act.  The movant herein is permitted to maintain this action to conclusion without the necessity of prepayment of fees or costs or the giving of security therefor.

It is further ordered that, pursuant to 28 U.S.C. § 1915, as amended by the Prison Litigation Reform Act, the Nevada Department of Corrections will forward payments from the account of Ronald C. Williams, # 87832 to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits (in months that the account exceeds $10.00) until the full $350 filing fee has been paid for this action.  The Clerk of the Court will send a copy of this order to the Finance Division of the Clerk's Office.  The Clerk will send a copy of this order to the attention of **Chief of Inmate Services for the Nevada Department of Corrections,** P.O. Box 7011, Carson City, NV 89702.

It is further ordered that, even if this action is dismissed, or is otherwise unsuccessful, the full filing fee will still be due, pursuant to 28 U.S.C. §1915, as amended by the Prison Litigation Reform Act.

It is further ordered that the operative complaint is the Second Amended Complaint (ECF No. 26).

1    It is further ordered that the entire Second Amendment complaint is dismissed with

2  prejudice, as amendment would be futile.

3    It is further ordered that the motion for appointment of counsel (ECF No. 25) is

4  denied.

5    It is further ordered that this Court certifies that any *in forma pauperis* appeal from

6  this order would not be taken "in good faith" pursuant to 28 U.S.C. § 1915(a)(3).

7    It is further ordered that the Clerk of the Court shall enter judgment accordingly

8  and close this case.

9    DATED THIS   13   day of   August    2021.

10

11   _____

12   UNITED STATES DISTRICT JUDGE